UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KATHLEEN VITA,<br><br>                        Plaintiff,<br><br>v.<br><br>LUCEN VITA, MARIA VITA, 1 WILTON ROAD WESTPORT LLC, JOHN DOES 1-10, JANE DOES 1-10, and ABC ENTITIES 1-10,<br><br>                        Defendants. | Civil Action No. 21-11060 (SRC)<br><br>**OPINION & ORDER** |
| LUCIEN VITA and MARIA VITA,<br><br>                        Third-Party Plaintiffs,<br><br>v.<br><br>CHRISTOPHER JACKSON and HURRI-HOMES, LLC,<br><br>                        Third-Party Defendants. | |

**CHESLER**, District Judge

      This matter comes before the court on Plaintiff Kathleen Vita ("Plaintiff")'s motion to enforce the parties' purported settlement. Defendants Lucien Vita and Maria Vita ("Defendants") oppose the motion. The Court will proceed to rule on the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the motion will be denied.

**I**

This case arises from a financial dispute between family members. Plaintiff wired over $500,000 to her brother and sister-in-law (Defendants Lucien and Maria Vita), Defendant 1 Wilton Road Westport LLC, and third-party defendant Hurri Homes, LLC. The payment was ostensibly to be used in connection with Hurri Homes's business, but according to Plaintiff, Defendants absconded with the funds.

Plaintiff sued in the Superior Court of New Jersey, Hudson County on April 13, 2021. (ECF No. 1-1). Defendant removed to this Court on one month later. (ECF No. 1). This Court has issued two Opinions on the matter—first dismissing several counts of the original complaint with prejudice (ECF No. 14), and later dismissing several counts of the amended complaint with and without prejudice (ECF No. 37). The parties engaged in an unsuccessful mediation before Jennine Disomma, Esq. but remained "in discussions." (ECF Nos. 55, 63). This Court conducted a similarly unsuccessful settlement conference on January 17, 2024. (ECF No. 68).

On March 11, 2024, counsel for Defendants circulated a "proposed draft settlement agreement . . . subject to further review/comment and final approval by our client[.]" (ECF No. 73-1, at p. 4). One week later, counsel for Plaintiffs wrote that his client had accepted "the total of $210,000.00." (ECF No. 73-1 at p.19). On May 7, 2024, Plaintiff's counsel emailed Defendants' counsel with several proposed changes to the settlement agreement. (ECF No. 73-1 at p.24). On May 9, 2024, Plaintiff sat for a deposition in a related case pending in Connecticut during which she allegedly "said many hurtful, false, and inflammatory things." (ECF No. 73-1 at p. 45). Plaintiff's counsel indicated that he was not aware she would be sitting for this deposition and expressed that, other than "carving out any potential action anyone may think they have in connection with the proceedings taking place in CT," Plaintiff's deposition should not "impact the

settlement of the lawsuits here[.]" (ECF No. 73-1 at pp.44-45). Plaintiff's counsel emailed again on May 14, 2024 to inform Defendants' counsel that Plaintiff approved the May 13, 2024 settlement agreement draft. (ECF No. 73-1 at p.44). The final email communication submitted by the parties occurred later the same day when Defendants' counsel asked counsel for third-party defendant Christopher Jackson whether his client had "approved this version [of the Settlement Agreement] and is prepared to sign." (ECF No. 73-1 at p.71). No further communication between the parties has been submitted to the Court.[1]

Plaintiff argues that the email communications in May 2024 constituted acceptance and consummation of the settlement agreement. In their telling, the "agreement on the basic terms of the settlement and exchange of written drafts" comprised an agreed-to settlement, upon which Defendants have reneged as a result of Plaintiff's comments in her Connecticut deposition. Defendants respond that the email communications make clear there was no meeting of the minds with respect to a settlement agreement, so there was no agreement upon which they could renege.

## II

"Courts treat a motion to enforce settlement under the same standard as a motion for summary judgment because the central issue is whether there is any dispute of material fact as to the validity of the settlement agreement." Martin v. Hoveround Corp., No. 10-3970, 2011 WL 742573, at *2 (D.N.J. Feb. 24, 2011) (citing Washington v. Klem, 388 F. App'x 84, 85 (3d Cir. 2010)); see also Tiernan v. Devoe, 923 F.2d 1024, 1031 (3d Cir. 1991) (applying the summary judgment standard to a motion to enforce settlement). Federal Rule of Civil Procedure 56(a)

---

[1] Plaintiff also includes, as Exhibit A to her Reply Brief, a June 21, 2024 letter from an attorney in Connecticut threatening litigation. See (ECF No.76-1 at p.4). The complaint in the ensuing lawsuit, filed in the Superior Court of Connecticut on July 12, 2024, is attached as Exhibit B. See id. at p.7. Neither the letter nor the complaint has any bearing on the substantive question of whether a settlement agreement was reached in this case.

provides that "a court may grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Cartrett, 477 U.S. 317, 322-23 (1986). The district court "must view the evidence 'in the light most favorable to the opposing party.'" Tolan v. Cotton, 572 U.S. 650, 657 (2014) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). The court may not make credibility determinations or engage in any weighing of the evidence. Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986); see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (holding same).

Courts look to general principles of local contract law to resolve issues surrounding the validity of settlement agreements. Mortellite v. Novartis Crop Prot., Inc., 460 F.3d 483, 492 (3d Cir. 2006); Green v. John H. Lewis & Co., 486 F2d 389, 390 (3d Cir. 1970). New Jersey is both the forum state and the state where the settlement was reached, so New Jersey law applies. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). New Jersey has a strong public policy in favor of settlements, so "any party seeking to avoid a settlement agreement must show by clear and convincing evidence that the agreement is unenforceable." Singh v. Twp. of Weehawken, No. 15-3478, 2024 WL 1739867, at *5 (D.N.J. Apr. 23, 2024) (citing Nolan v. Lee Ho, 120 N.J. 465, 471-72 (1990)); see also Dep't of Pub. Advocate v. N.J. Bd. of Pub. Util, 206 N.J. Super. 523, 528 (App. Div. 1985).

Plaintiff's motion does not meet its burden to show there is no issue of material fact as to whether a settlement was reached. She offers a series of communications which demonstrate, at most, that the parties circulated draft written agreements and that a final amount was agreed-to. The circulation of a draft settlement agreement with the admonition "[t]his remains subject to further review/comment and final approval by our client" is a far cry from a manifestation of

4

assent. See James v. Global TelLink Corp., 852 F.3d 252, 266 (3d Cir. 2017) (quoting Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992)) ("To manifest assent, an offeree must provide 'unqualified acceptance,' which can be express or implied by conduct."). Further details found in the communications between the parties confirm as much: No party responded to the mediator's request for confirmation that the case had been settled, neither the defendants nor third-party defendants responded to Plaintiff's counsel's email regarding the distribution of the final settlement amount, and Defendants' counsel explicitly noted that he had not received final approval from Defendant on the terms of the final settlement agreement. (ECF No. 73-1 at p.5); (ECF No. 75-1 at ¶ 5). Further, the various redlined versions of the circulated draft agreement contain extensive revisions and changes; the mere existence of these proposed changes, without further circulation of a "final" draft or an indication that the counterparty accepted those changes, is sufficient to demonstrate there was no meeting of the minds. See, e.g., St. Michael's Media, Inc. v. Mayor and City Council of Baltimore, 566 F. Supp. 3d 327, 379 (D. Md. 2021) (holding that dissemination of a contract with redline edits indicated that the parties did not yet intend to be bound); cf., e.g., Black Jaguar, White Tiger, Foundation v. Tiffany, No. 18-10987, 2019 WL 11461785, at *9 (D. Mass. Dec. 3, 2019) (holding that minor proposed redline changes did not hinder mutual assent). In short, the record is entirely devoid of any evidence that would indicate a meeting of the minds as to the terms of the settlement agreement.

Plaintiff offers no legal or factual support for her argument that there was a meeting of the minds here. Her brief in support of the motion merely describes the terms of the proposed agreement and states that Defendants "are reneging on their agreements to settle the matter." (ECF No. 73-2 at p.4). Her legal argument also assumes the existence of an agreement, spending the bulk of the substantive brief discussing inapplicable New Jersey case law regarding mediation

conducted under N.J. Ct. R. 1:40-4 without addressing whether an agreement existed. Her reply brief offers no further legal support for the existence of a meeting of the minds but instead, again, assumes the conclusion that such a result was reached. Plaintiff makes much of the purported "true motive" of Defendants in "blowing up" the "enforceable settlement agreement": dissatisfaction with Plaintiff's deposition testimony in the Connecticut matter. (ECF No. 76 at p.2). But this occludes the very simple legal issue of whether the parties manifested mutual assent to be bound by the terms of the settlement agreement. Parties to a contract negotiation are well within their rights to terminate those negotiations and walk away from the deal prior to consummation of the agreement. See Payer v. Berrones, No. 12-1704, 2015 WL 4715953, at *3 (D.N.J. Aug. 7, 2015) ("In order to have an enforceable settlement or contract there must be a meeting of the minds for each material term to an agreement.") (internal citations and quotations omitted); Weichert Co., 128 N.J. at 435 ("Where the parties do not agree to one or more essential terms, courts generally hold that an agreement is unenforceable."). Simply put, Defendants could not have "blown up" the settlement because no settlement had been reached. Plaintiff has offered no legal or factual reason for the Court to find that Defendants' decision not to consummate the settlement was improper.

\*    \*    \*

For these reasons,

**IT IS** on this 6th day of August, 2024

**ORDERED** that Plaintiff Kathleen Vita's motion to enforce settlement (Docket Entry No. 73) is **DENIED**.

                                                                                       s/Stanley R. Chesler
                                                          STANLEY R. CHESLER, U.S.D.J.

Dated: August 6, 2024